UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>ROMAN KITROSER,<br><br>　　　　　　　　　Defendant. | 15 Cr. 19-1 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant Roman Kitroser, who is currently housed at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), has applied for compassionate release, in the form of a reduction in sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In support, Mr. Kitroser cites various medical and mental health issues that he has experienced during his confinement; the conditions of his confinement during the ongoing COVID-19 pandemic; his strides towards rehabilitation; and recent non-retroactive changes to penalties associated with his offense of conviction. The Government opposes this motion. As set forth in the remainder of this Order, the Court grants in part Mr. Kitroser's motion.

## BACKGROUND

The Court incorporates by reference the detailed histories of Mr. Kitroser's offense conduct and of his prosecution that are set forth in the Court's prior decision denying his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. *See Kitroser* v. *United States*, Nos. 17 Civ. 4142 (KPF) and 15 Cr. 19-1 (KPF), 2019 WL 5395600, at *1-6 (S.D.N.Y. Oct. 22, 2019). (Dkt. #152). In broad summary, from at least as early as

December 2013 until his arrest in December 2014, Mr. Kitroser headed a drug-trafficking organization with outposts in both Manhattan and Brooklyn that imported substantial quantities of controlled substances from Arizona and California. (*See* Final Revised Presentence Investigation Report ("PSR" (Dkt. #133)) ¶¶ 12-32, 34). During the course of their investigation into Mr. Kitroser's organization, agents with the U.S. Drug Enforcement Administration (the "DEA") recovered over 69 kilograms of cocaine, 38 grams of cocaine base (commonly known as "crack" cocaine), 6 kilograms of heroin, 980 grams of MDMA, and 1 kilogram of marijuana, along with drug paraphernalia that included a kilogram press, fake identification documents, cell phones, drug ledgers, scales, money counters, and more than $2 million in cash. (*Id.* ¶¶ 27, 29-32). Of greater concern to this Court, DEA agents also recovered nine firearms (including three machineguns), two silencers, ammunition, and two hand grenades. (*Id.* ¶¶ 27, 30).

On December 12, 2014, one day after his arrest, Mr. Kitroser and three co-defendants (one of whom was his then-girlfriend, Natisha Aponte) were charged in a criminal complaint with narcotics and firearms offenses. (Dkt. #1). One month later, on January 13, 2015, Mr. Kitroser and his co-defendants were charged in an indictment (the "Indictment") with conspiracy to distribute and to possess with the intent to distribute cocaine, heroin, and marijuana, in violation of 21 U.S.C. § 846, and Mr. Kitroser and Ms. Aponte were charged with using, carrying, or possessing firearms, including machineguns, silencers, and destructive devices, in furtherance of the charged

narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c) and 2.  A prior felony information was filed by the Government against Mr. Kitroser on October 21, 2015 (Dkt. #79), and an order scheduling trial was filed by the Court on October 22, 2015 (Dkt. #80).

On November 2, 2015, Mr. Kitroser pleaded guilty to Count One of the Indictment pursuant to a written plea agreement with the Government.  In the agreement, the parties stipulated to a sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") of 324 to 405 months' imprisonment, with a mandatory minimum term of 240 months' imprisonment. (PSR ¶¶ 2-6).  Thereafter, the United States Probation Office prepared the PSR in this case; the PSR indicated, among other things, that Mr. Kitroser had three prior criminal convictions, including a conviction in the United States District Court for the Eastern District of New York for conspiracy to distribute and to possess with the intent to distribute crack cocaine, for which Mr. Kitroser had been sentenced principally to a term of 88 months' imprisonment.  (*See generally* PSR ¶¶ 57-59).  The Probation Office also noted the difficult circumstances of Mr. Kitroser's upbringing, which included his father's gambling habit and abandonment of the family, as well as his parents' health issues (*id.* ¶¶ 67, 69).

Sentencing for Mr. Kitroser took place on June 3, 2016.  (*See* Dkt. #136 (sentencing transcript); Dkt. #129 (judgment)).  As relevant here, the Government sought a sentence at the high end of the applicable Guidelines range, citing "the dangerousness and expansiveness of this conspiracy,

3

particularly in light of the defendant's significant criminal history" (Dkt. #136 at 15), while Mr. Kitroser sought the mandatory minimum term of 240 months' imprisonment (*id.* at 21-22, 26-27).  After counsel for each side was given an opportunity to make an oral sentencing presentation, Mr. Kitroser spoke to the Court, apologizing for his actions and for the consequences of his actions to his family and Ms. Aponte.  (*Id.* at 27-31).

After taking a recess to consider the parties' arguments, the Court then imposed sentence.  The Court discussed the circumstances of Mr. Kitroser's upbringing, the trauma attendant to a 2013 shooting incident, Mr. Kitroser's history of substance abuse, and the perspectives of those who had written letters in support of Mr. Kitroser in connection with his sentencing.  (Dkt. #136 at 33-34).  The Court also considered countervailing factors, including the quantity of narcotics, and the conspiracy's use and possession of numerous firearms and silencers.  The Court concluded:

> [W]hen you look at things that folks say may not be accurate predictors or proxies for culpability, they are all here.  There is a prior conviction, there is substantial jail time on narcotics charges, which itself that conviction was the product of a four-year involvement in a narcotics conspiracy, and where there was criminal conduct while on pretrial release.
>
> There was an 88-month sentence that did not teach [Mr. Kitroser] that this was the wrong thing to do.  There is a prior violation of supervised release. There is a subsequent conviction for forged instrument.  I can't say that the guidelines [of 324 to 405 months] were inaccurately calculated.  I can't say that that is wrong. That said, there is a degree to which you look at them, and I am looking at them and thinking, they are a little too high. …

4

> [T]he Mr. Kitroser who appears before me today is a different man than the man who appeared before me in January of last year, and for this reason I am varying downward modestly to 300 months' imprisonment. That's 25-year sentence because the 20 years is not enough, given everything that's happened. But 27 years or whatever 405 months works out to, that doesn't seem to be any incremental benefit. I don't think he is going to learn more. I don't think society is going to be deterred more. And I think that everything I wanted to communicate in terms of the concerns about society and the need for [rehabilitation] is communicated in a 300-month sentence.

(*Id.* at 34-35).

Mr. Kitroser initially appealed from the judgment of conviction to the United States Court of Appeals for the Second Circuit (Dkt. #138), but later withdrew the appeal (Dkt. #162). On June 2, 2017, Mr. Kitroser filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction, claiming ineffectiveness on the part of his prior counsel. (Dkt. #140). On October 22, 2019, this Court issued an Opinion and Order denying the motion. (Dkt. #152). Mr. Kitroser appealed from the Court's decision, and his request for a certificate of appealability was denied by the Second Circuit on November 17, 2020. (Dkt. #156 (mandate)).

Mr. Kitroser filed a counseled motion for compassionate release on July 6, 2022. (Dkt. #159-161). The Government filed its opposition submission on August 31, 2022. (Dkt. #166). Mr. Kitroser filed his reply brief on September 16, 2022. (Dkt. #167). Earlier this year, the parties filed a series of letters updating the Court on Mr. Kitroser's status. (Dkt. #168, 170-171). In addition, in preparation for this motion, the Court obtained updated

medical, mental health, disciplinary, and programming records from the Bureau of Prisons ("BOP").

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "FSA), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons (the "BOP"), or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*; *cf. United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the Government may waive or forfeit the exhaustion requirement).

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed … to provide the defendant with … correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and

7

> compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing what can qualify as "extraordinary and compelling reasons"). The court's discretion includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

## DISCUSSION

The Government does not dispute, for purposes of this motion, that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied. (*See* Dkt. #161 at 9 (defense discussion of request to BOP); Dkt. #166 at 4 (Government not disputing exhaustion of remedies)). The Court thus proceeds to consider whether Mr. Kitroser has identified "extraordinary and compelling reasons" warranting his release, and concludes as to certain of his arguments that he has.

The Court addresses Mr. Kitroser's claims out of order, beginning with his claim of extraordinary post-conviction rehabilitation. (Dkt. #161 at 16-17; Dkt. #167 at 1). As Mr. Kitroser acknowledges (Dkt. #161 at 16), "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), though a court may consider it in combination with other factors in determining whether there are extraordinary and compelling reasons for a sentence reduction. *See United States* v. *Torres*,

8

464 F. Supp. 3d 651, 661 (S.D.N.Y. 2020); *see also Brooker*, 976 F.3d at 237-38. Mr. Kitroser touts his participation in extensive BOP programming (Dkt. #161 at 16), and the Court commends him for using his time productively while incarcerated. However, courts have generally found that participation in such programming is neither exceptional nor unusual. *See United States* v. *Frazier*, No. 17 Cr. 364-7 (CS), 2023 WL 2139520, at *1 (S.D.N.Y. Feb. 21, 2023) (citing *United States* v. *Bennett*, No. 15 Cr. 95 (JPC), 2022 WL 3445349, at *3 (S.D.N.Y. Aug. 17, 2022) ("[District courts in this Circuit have widely held that rehabilitation through participation in prison programs and religious organization does not constitute an 'extraordinary and compelling' justification for release." (internal quotation marks and citation omitted))). In addition, Mr. Kitroser has been the subject of several disciplinary proceedings while under BOP supervision, although the Court notes that (i) most of them have been for possession of narcotics or alcohol and (ii) the most recent incident took place in September 2019. (Disciplinary Records).

Mr. Kitroser also cites recent non-retroactive changes to the mandatory minimum term applicable to his offense of conviction that were occasioned by Section 401 of the FSA; in particular, the mandatory minimum term is now 15 years, rather than 20 years. (Dkt. #161 at 17-21). It is true that courts in this Circuit have found that changes to the applicable statutory mandatory minimum can constitute extraordinary and compelling circumstances warranting compassionate release. *See, e.g.*, *United States* v. *Watts*, No. 92 Cr. 767 (KAM), 2023 WL 35029, at *6-7 (E.D.N.Y. Jan. 4, 2023) (collecting cases);

9

*United States* v. *Carlton*, No. 05 Cr. 796 (PGG), 2022 WL 17104061, at *5 (S.D.N.Y. Nov. 22, 2022) (collecting cases), *reconsideration denied*, No. 05 Cr. 796 (PGG), 2023 WL 1070219 (S.D.N.Y. Jan. 27, 2023); *see also United States* v. *Davis*, No. 21-716, 2022 WL 1320316, at *2 (2d Cir. May 3, 2022) (summary order) ("[W]e decline to determine whether … the FSA's reduction of the mandatory minimum sentence applicable to [defendant's] offense does not constitute an extraordinary and compelling circumstance under § 3582."). The fact remains, however, that while this Court considered the applicable Guidelines range in deciding to impose a below-Guidelines sentence in that case, it did not determine that sentence with reference to the mandatory minimum term of imprisonment.[1]

Separately, Mr. Kitroser notes that events during his incarceration have operated to trigger long-repressed memories of childhood trauma. (Dkt. #161 at 6-8, 16-17; Dkt. #167 at 3). Precisely because of the seriousness of Mr. Kitroser's statements, the Court does not detail them here. The Court does not find that Mr. Kitroser's recollections, on their own, constitute an extraordinary and compelling circumstance warranting compassionate release, though they may suffice when considered in tandem with other circumstances discussed

---

[1] To the extent that Mr. Kitroser reframes the argument as one of proportionality, this Court reiterates that he has demonstrated neither an extraordinary and compelling circumstance nor a basis for a reduction in sentence pursuant to § 3582(c)(1)(A)(i). (Dkt. #161 at 21-23). On this point, Mr. Kitroser's citation to Jose Lora as a comparator is particularly inapt, in that Mr. Lora, among other salient differences, (i) did not have the arsenal of weapons that Mr. Kitroser maintained and (ii) did not attempt to intimidate a co-defendant and her counsel during his prosecution. (*See* Dkt. #138 at 17, 34-35 (discussing interference with defense of Natisha Aponte)). *See generally United States* v. *Lora*, No. 16 Cr. 44-5 (KPF), 2022 WL 1055749 (S.D.N.Y. Apr. 8, 2022).

*infra.* While not disputing the accuracy of his recollections, the Court notes that Mr. Kitroser does not appear to have availed himself fully of the mental health services available at FCI Fort Dix; there are multiple references in his medical and mental health records to Mr. Kitroser being advised as to how to obtain mental health treatment, but Mr. Kitroser appears only to have reported problems with chronic substance abuse. (Medical Records; Psychology Services Records).[2] In any event, the childhood trauma recalled by Mr. Kitroser might explain his history of substance abuse, but it does not satisfactorily explain his upward trajectory between federal criminal cases from street-level dealer to organizational head, nor does it explain his decision to accumulate the firearms, silencers, and grenades in furtherance of the charged conspiracy.

Relatedly, Mr. Kitroser argues that certain of his current medical conditions — including his psoriasis, knee and foot issues, and obesity — have been exacerbated by his conditions of confinement during the pandemic. (Dkt. #161 at 13-16; Dkt. #167 at 2). Furthermore, Mr. Kitroser claims that two of his co-morbidities, his obesity and his prolonged use of corticosteroids, expose him to a risk of a greater reaction were he to contract, again, the COVID-19 virus. (Dkt. #161 at 15-16). Working in reverse order, the Court acknowledges that courts in this District have granted, and denied, compassionate release motions predicated on the existence of the COVID-19 pandemic and the risks of its transmission in prisons. *See generally United States* v. *Morrison,* No. 16

---

[2] The records of the group sessions in which Mr. Kitroser participated reflect that many sessions in 2020 and 2021 were cancelled on account of the pandemic. (Psychology Services Records).

11

Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) (collecting cases).  This Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."  *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases).

As to the issue of increased susceptibility, Mr. Kitroser has not made a sufficient showing.  Mr. Kitroser is 46 years old, and people over 40 years of age have been identified by the Centers for Disease Control and Prevention (the "CDC") as a group who may be more susceptible to hospitalization or death if they were to contract the COVID-19 virus.  *See* CDC, *Risk for COVID-19 Infection, Hospitalization, and Death By Age Group*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (accessed Apr. 30, 2023).  The CDC has also identified obesity and weakened immune systems from long-term use of corticosteroids as conditions that might increase an individual's chances of contracting severe illness from the COVID-19 virus.  *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed Apr. 30, 2023).  But this Court observes that Mr. Kitroser has received the COVID-19 vaccine.  (Dkt. #143 at 30; Dkt. #149 at 8).  Mr. Kitroser's

vaccinated status mitigates, though it does not reduce entirely, his risk of contracting the COVID-19 virus and having serious medical conditions, and it counsels against a finding of "extraordinary and compelling reasons." *See United States* v. *Bailey*, No. 97 Cr. 269 (DLC), 2021 WL 4942954, at *2 (S.D.N.Y. Oct. 22, 2021) ("While the intersection of the COVID-19 pandemic and underlying health conditions can serve as an extraordinary and compelling circumstance justifying compassionate release, Bailey is fully vaccinated against COVID-19 and his medical records indicate that his chronic health conditions are well-controlled. Bailey's risk of continued incarceration given the COVID-19 pandemic does not qualify as an extraordinary and compelling circumstance.").

As it has in prior cases, the Court has also considered the risk to Mr. Kitroser as a result of his imprisonment at FCI Fort Dix. *See, e.g., United States* v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *5-6 (S.D.N.Y. June 8, 2020), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093 (S.D.N.Y. Sept. 1, 2020). To that end, this Court has scrutinized BOP's COVID-19 Plan, *see* https://www.bop.gov/coronavirus/ (last accessed May 1, 2023), as well as BOP's listing of confirmed cases among inmates and staff at each facility. As of the date of this Order, FCI Fort Dix was listed among the BOP's "Level 1 Facilities," a designation given to facilities operating with minimal modifications. In addition, BOP has identified no current cases of COVID-19 among inmates or staff at FCI Fort Dix. On balance, this Court concludes that the danger that Mr. Kitroser faces from infection with COVID-19, even

13

accounting for his proffered risk factors, does not in and of itself amount to an extraordinary and compelling reason for granting compassionate release. *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Mr. Kitroser advances an additional argument for compassionate release based on his medical conditions — namely, that through BOP neglect or inattention, he has received substandard medical treatment for those conditions, especially for his psoriasis and his bunion. (Dkt. #161 at 14-15; Dkt. #167 at 2). The Court has reviewed with care several hundred pages of medical records concerning Mr. Kitroser's treatment while in BOP custody. On the whole, it believes that BOP has responded promptly and appropriately to Mr. Kitroser's medical conditions. The fact remains, however, that Mr. Kitroser has had a number of medical issues while in federal detention, including a November 2022 incident in which Mr. Kitroser fell and was injured in the shower, either as a result of a seizure or a prison assault. (Dkt. #168, 170, 171). It appears to the Court that the most acute of Mr. Kitroser's medical issues have been resolved. That said, the fact that Mr. Kitroser has experienced so many medical issues while incarcerated suggests that his

14

detention, irrespective of the COVID-19 pandemic, has resulted in more deleterious consequences to his health than were faced by other federal inmates during this period.

This conclusion dovetails with another basis that this Court has recognized for compassionate release, namely, that the conditions of Mr. Kitroser's confinement during the COVID-19 pandemic have resulted in a sentence that was more severe than the Court could have contemplated when it originally sentenced him in June 2016.  While the Court sought to carefully balance the information then available, it could not have foreseen the restrictions that would be precipitated by the pandemic (including lockdowns and curtailment of facility programming and visitation), nor the public health risks faced by individuals like Mr. Kitroser who have spent the entirety of the pandemic in a carceral setting, nor the length of time over which these risks and deprivations would persist.  And in a prior decision resolving a compassionate release motion, the Court recognized "that courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences 'harsher and more punitive than would otherwise have been the case.'"  *United States* v. *Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (quoting *United States* v. *Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)); *see also United States* v. *Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown

15

and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing."). In short, the Court has previously concluded, and concludes here, that pandemic-induced conditions of confinement can constitute "extraordinary and compelling" circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic. Here, using the metrics of his mental and physical health, Mr. Kitroser has experienced harsher conditions of confinement than could have been anticipated, and the Court finds that the length and totality of these conditions amount to extraordinary and compelling circumstances under § 3582(c)(1)(A)(i). It therefore proceeds to consider whether such relief is warranted in this case in light of the factors set forth in 18 U.S.C. § 3553(a).

The Court concludes that the factors set forth in 18 U.S.C. § 3553(a) — which include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C) — counsel in favor of only a modest reduction in sentence. At the time the Court sentenced Mr. Kitroser, it considered him to be one of the most dangerous narcotics traffickers it had encountered, not merely because of the quantities of controlled substances

involved, but also because of the ease with which he considered violence and intimidation, even after his arrest.  Seven additional years on the bench has not changed the Court's view.  And as the Court noted at the time of sentencing, Mr. Kitroser's conduct in the instant case — occurring as it did when he was 39 years old and after a prior federal narcotics conviction for which he received an 88-month sentence — raised a number of red flags concerning specific and general deterrence.  The Court also notes certain blemishes on Mr. Kitroser's prison disciplinary record.  (Disciplinary Records).  But the Court has also considered the effects of detention on Mr. Kitroser's physical and mental health that were discussed earlier.  And with respect to positive developments, the Court is pleased to learn of Mr. Kitroser's extensive efforts to rehabilitate himself in prison and of his strong relationship with his son.  (*See, e.g.*, Dkt. #161 at 8, 25-27; Dkt. #167 at 1-4).  For all of these reasons, the Court will grant Mr. Kitroser's motion to the extent that it will impose an 18-month reduction in his sentence.

## CONCLUSION

For the foregoing reasons, Defendant Roman Kitroser's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is GRANTED IN PART, insofar as his sentence is modified to reduce the term of imprisonment on Count One from 300 months to 282 months.  All other aspects of the sentence remain in full force and effect.

The Clerk of Court is directed to terminate the motion at docket entry 159.  In addition, the Government is directed to transmit a copy of this Order

to the appropriate personnel at FCI Fort Dix, so that BOP staff may be aware of this Court's request that Mr. Kitroser receive prompt attention — including a consultation with a dermatologist — to address his severe psoriasis.

SO ORDERED.

Dated: May 1, 2023
       New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge